IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAYLIN DANTE STARKS,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:26-cr-00043-SMR-WPK-1<br><br><br>ORDER ON MOTION TO SUPPRESS |

Defendant Jaylin Dante Starks was indicted by a grand jury on one count of conspiracy to distribute fentanyl resulting in serious bodily injury, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, and one count of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). [ECF No. 4].

The charges arise from an investigation into the near-fatal fentanyl overdose of Defendant's three-year-old son. Officers seized the van Defendant drove to the hospital the night of the overdose and the cell phone he left at the hospital. Law enforcement then obtained a state search warrant for both. The search of the van uncovered approximately eighteen grams of fentanyl, a scale, a blender, and $3,280 in cash.

Defendant moves to suppress all evidence obtained from the van and the phone. [ECF No. 27]. The Government resists. [ECF No. 31]. Defendant replied. [ECF No. 33]. The Court held a hearing on September 17, 2026. [ECF No. 36].

## I. BACKGROUND

### *A. The Overdose and the Initial Investigation*

Shortly after 10:00 p.m. on February 6, 2026, Defendant carried his three-year-old son, J.S., into the emergency department at Broadlawns Medical Center in Des Moines. [ECF No. 27-

2 at 7–8] (sealed). J.S. was unresponsive and in respiratory arrest. *Id.* at 8. Hospital staff administered two doses of Narcan, and J.S. revived. *Id.* J.S. was later transferred by ambulance to MercyOne Medical Center, where a urinalysis detected fentanyl. [ECF No. 27-1 at 3] (sealed). Hospital staff notified the Iowa Department of Health and Human Services ("DHS"), which contacted the Des Moines Police Department. *Id.*; [ECF No. 27-2 at 6] (sealed).

On the evening of February 7, Detective Craig Vasquez and a DHS caseworker interviewed Defendant in J.S.'s hospital room. [ECF No. 27-2 at 6] (sealed). Defendant said he lived in Michigan and had come to Iowa to help the mother of his twin children buy a vehicle. *Id.* at 7. He said he and J.S. spent February 6 running errands around Des Moines and then returned to the twins' mother's apartment, where J.S. became sleepy and began struggling to breathe. *Id.*

Defendant said he placed J.S. in the bathtub and ran water over him in an attempt to treat these symptoms. *Id.* He then ran outside with J.S. but had forgotten his keys. *Id.* According to Defendant, two strangers in a "silver Pontiac van" then drove him and J.S. to Broadlawns. *Id.* He gave the apartment number for the twins' mother as 89 and confirmed it when asked. [ECF No. 27-3 at 13] (sealed); [ECF No. 27-10 at 0:14–0:45] (sealed). He also said he believed J.S.'s mother lived in Atlanta. [ECF No. 27-3 at 14] (sealed); [ECF No. 31-1 at 13:54].

Several parts of that account did not hold up. Broadlawns surveillance video showed a light-colored minivan pulling into the lot at about 10:06 p.m. [ECF No. 27-2 at 8] (sealed). It showed a single figure carrying J.S. from the van into the emergency department. *Id.* No one else appeared to get out. *Id.* Treating staff likewise recalled that Defendant arrived alone with J.S. by private vehicle. *Id.*

The occupant of apartment number 89 did not know the twins' mother. *Id.* And an off-duty officer then found a silver 2005 Dodge Grand Caravan in the MercyOne parking lot. [ECF

No. 27-3 at 15] (sealed). It was registered to the twins' mother at apartment number 87. *Id.*; [ECF No. 27-6 at 4] (sealed). MercyOne security images appeared to show Defendant standing near that Caravan around 3:00 a.m. on February 7. [ECF No. 27-3 at 16] (sealed). J.S.'s mother was later found to live in Des Moines. [ECF No. 27-2 at 9] (sealed).

Detective Vasquez had the Caravan towed and placed on an investigative hold at about 11:39 p.m. on February 7. [ECF No. 27-5] (sealed); [ECF No. 27-2 at 8–9] (sealed). He explained that because Defendant "appeared to have lied" about how J.S. reached Broadlawns, impounding the van "would benefit this investigation." [ECF No. 27-2 at 8] (sealed).

*B. Defendant's Departure and the Phone's Retrieval*

At about 5:00 a.m. on February 8, Defendant returned to MercyOne. [ECF No. 27-2 at 5] (sealed). He asked Officer Brian Cuppy, who was working off-duty hospital security, whether a tow truck had removed a vehicle. *Id.* Officer Cuppy told him the van had been impounded as part of the investigation. *Id.*

While hospital staff decided whether to permit Defendant to return to J.S.'s room, Officer Cuppy had him wait in the lobby. *Id.* Defendant said he believed that he had left his phone in the room, and Officer Cuppy said that they would retrieve it. *Id.*; [ECF No. 27-8 at 2:20–2:27] (sealed). Staff then decided Defendant could not return. [ECF No. 27-2 at 5] (sealed). Defendant left the hospital without raising the phone again. *Id.*; [ECF No. 27-8 at 7:11–7:21] (sealed).

Later that morning, J.S.'s mother told officers that Defendant had called her from an unfamiliar number. [ECF No. 27-2 at 3, 9] (sealed). She reported that he said he was "on the run" and told her to go get J.S. *Id.*

The same day, hospital staff found J.S. playing with a cell phone. *Id.* at 11. Officer Michael Miller, also working off-duty at MercyOne, went to J.S.'s floor. *Id.* A staff member directed

Officer Miller to a nurse, who had the phone. [ECF No. 27-9 at 1:13–1:40] (sealed). She remarked that she had not been able to put it into airplane mode, and she scrolled through notifications on the locked screen as the officer stood by. She also suggested that J.S. might be able to open the phone, as he was smart and appeared to have been playing on the phone earlier. *Id.* at 1:31–1:40.

Officer Miller then held the phone in front of J.S. and asked whether he knew how to open it. *Id.* at 1:51–2:41. J.S. entered an incorrect passcode, which temporarily disabled the phone. *Id.* Detective Vasquez later explained that he had asked Officer Miller to do this "only to get the phone in airplane mode and nothing more." [ECF No. 27-2 at 11] (sealed). Officers took the phone to the police station and stored it in a locked office on a charger. *Id.*

*C. The Warrant and the Searches*

By about 12:25 p.m. on February 8, Detective Vasquez had discussed the case with an Assistant Polk County Attorney. *Id.* at 10. The prosecutor agreed that officers should seek a warrant for the van, the apartment, Defendant's phone, and the twins' mother's phone. *Id.*

Detective Vasquez submitted the warrant application at 9:02 p.m. [ECF No. 27-3 at 28] (sealed). A Polk County district court judge signed the warrant at 9:16 p.m. *Id.* at 24, 28. The warrant authorized a search of the Caravan for "illegal drugs, photos, or . . . any evidence that may be relevant to the drug overdose." *Id.* at 7. As to Defendant's phone, it authorized a search for categories of historical data: call records, stored communications, images, contacts, text messages, calendar data, web and search history, social media content, GPS information, "and any other files associated with the device(s)." *Id.*

Officers searched the Caravan on February 9. [ECF No. 27-2 at 11] (sealed). Inside a suitcase on the floorboard, they found a THC pen and $3,280 in cash. *Id.* A plastic bag held a

scale, a blender, and baggies containing approximately eighteen grams of fentanyl. *Id.* at 11–12. Officers also extracted the contents of Defendant's phone. *Id.* at 12.

*D. Motion to Suppress*

Defendant offers five arguments why the evidence from the van and the phone should be excluded. He argues that officers seized the phone without probable cause or exigency and impounded the van on a hunch rather than on probable cause. He further contends that the warrant lacked a nexus to the van and the phone and was insufficiently particular as to the phone. Finally, he asserts that the affidavit contained misstatements and omissions that entitle him to a *Franks* hearing. [ECF No. 27-1] (sealed); *see also* [ECF No. 33].

The Court concludes that each argument fails. Probable cause supported the temporary seizure of the phone pending a warrant, and the phone's contents were in any event obtained through an independent source. Probable cause likewise supported the seizure of the van, and that seizure contributed nothing to the evidence officers later found under the warrant. The warrant established a nexus to both the van and the phone, it was sufficiently particular, and officers relied on it in good faith. And Defendant has not made the substantial preliminary showing required for a *Franks* hearing. The Motion to Suppress is DENIED. [ECF No. 27].

## II. DISCUSSION

*A. The Seizure of the Phone*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure of property occurs when there is "some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Warrantless seizures are presumptively unreasonable unless they fall within an established

exception. *United States v. Mays*, 993 F.3d 607, 614 (8th Cir. 2021). The Government bears the burden of justifying a warrantless seizure by a preponderance of the evidence. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

Defendant argues that officers seized his phone without probable cause or exigency. [ECF No. 27-1 at 7–11] (sealed). The Government responds that officers did not meaningfully interfere with Defendant's possessory interest, that any seizure was reasonable, and that the independent-source doctrine bars suppression in any event. [ECF No. 31 at 7–13].

The Court assumes that Officer Miller seized the phone when he took it into police custody. The seizure was nonetheless reasonable, and suppression would be unwarranted even if it were not.[1]

1. Temporary Seizure Pending a Warrant

The Fourth Amendment permits officers to seize property without a warrant when they have probable cause to believe it contains "contraband or evidence of a crime" and an exception to the warrant requirement applies. *Dunn v. Does 1–22*, 116 F.4th 737, 752 (8th Cir. 2024) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)). Officers may secure property while they seek a warrant to examine its contents if the exigencies of the circumstances demand it. *Place*, 462 U.S. at 701. The Supreme Court has accepted this principle for cell phones. *Riley v. California*, 573 U.S. 373, 388 (2014) (describing as "sensible" the defendants' concession that officers "could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant").

---

[1] Because the seizure was reasonable, the Court does not reach the Government's argument that officers did not meaningfully interfere with Defendant's possessory interest in the phone. [ECF No. 31 at 7–10]. Nor does the Court reach the related question whether Defendant abandoned the phone. *See id.* at 9; [ECF No. 33 at 1–3].

Securing property briefly to preserve evidence pending a warrant is reasonable when officers have probable cause, have good reason to fear the evidence will be lost, reasonably balance law enforcement needs against the individual's interests, and restrain the property no longer than reasonably necessary to obtain the warrant. *Illinois v. McArthur*, 531 U.S. 326, 331–33 (2001); *see also Segura v. United States*, 468 U.S. 796, 810 (1984). Each condition is satisfied here.

Officers first had probable cause to believe the phone held evidence of a crime. Probable cause exists when there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

By the time Officer Miller took the phone, investigators knew that J.S. had nearly died from fentanyl after spending most of that day with Defendant. They knew that Defendant had invented an account of strangers driving him to the hospital, which surveillance video contradicted. They also knew that he had given a wrong apartment number and incorrectly told investigators that J.S.'s mother lived in another state. After learning the van had been impounded, he left the hospital without his son. That morning, he called J.S.'s mother from an unfamiliar number and told her he was "on the run." [ECF No. 27-2 at 3, 9] (sealed).

Defendant had the phone with him during his interview, and J.S.'s mother later confirmed the phone number he gave investigators. [ECF No. 27-3 at 14, 17] (sealed). Taken together, those facts established a fair probability that the phone held evidence of how J.S. came to ingest fentanyl, including communications about the events of February 6 and location data showing where Defendant and J.S. were in the hours before the overdose. It makes no difference that Officer Miller may not have known these facts personally. He acted at Detective Vasquez's request, and the collective knowledge of communicating officers supports probable cause. *United States v. Horne*, 4 F.3d 579, 585 (8th Cir. 1993).

Officers also had good reason to fear that the phone's contents would be lost. Defendant knew officers were investigating him: they had impounded the van he drove that night as part of that investigation. He was not in custody. He had left the hospital and described himself as "on the run." And cell phone data can be wiped remotely. *Riley*, 573 U.S. at 388–90; *see also United States v. Meyer*, 19 F.4th 1028, 1033 (8th Cir. 2021). Securing the phone in airplane mode or in police custody was a reasonable way to guard against that risk.

Defendant argues that no exigency existed because J.S. had stabilized and the offense was complete. [ECF No. 27-1 at 10–11] (sealed). That argument conflates the child's medical condition with the risk to the evidence. The question is not whether J.S. remained in danger. It is whether the phone's contents might disappear before officers could obtain a warrant. They might well have.

Finally, the seizure was limited in scope and time. Officers did not access the phone's contents. They secured it and applied for a warrant the same day. Officer Miller retrieved the phone shortly after 1:00 p.m., and the warrant issued at 9:16 p.m., roughly eight hours later. [ECF No. 27-9 at 0:41] (sealed); [ECF No. 27-3 at 24, 28] (sealed).

*Dunn* is not to the contrary. There, the Eighth Circuit held that an officer unreasonably detained arrestees' phones for two days on reasonable suspicion alone, without taking any steps to obtain warrants. 116 F.4th at 752–53. Here, by contrast, officers had probable cause, and they secured a warrant the same day.

Defendant stresses that he was not in custody when officers seized his phone and that, as an out-of-state traveler, he would have relied on it. [ECF No. 27-1 at 8–9] (sealed). He contrasts his situation with two Eighth Circuit cases upholding warrantless phone seizures from defendants who were in custody. *See United States v. Bragg*, 44 F.4th 1067, 1072–73 (8th Cir. 2022)

(upholding a 24-day delay in obtaining a warrant where the defendant remained in custody throughout and never sought the phone's return); *United States v. Thomas*, 97 F.4th 1139, 1143 (8th Cir. 2024) (upholding a five-day warrantless seizure of a phone belonging to a defendant who was in custody during that period). A delay measured in hours is far less intrusive than either. Whatever reliance Defendant placed on the phone, he left the hospital without it and contacted J.S.'s mother using a different number. [ECF No. 27-2 at 9] (sealed).

For the same reasons, the seizure independently satisfies the exigent-circumstances exception. *See Mays*, 993 F.3d at 616 (recognizing an exigency where "there is a risk that the evidence contained therein would be lost" or destroyed if property is not seized immediately).

2. Hospital Staff and the Unlock Attempt

Defendant suggests that hospital staff seized the phone earlier as agents of law enforcement. [ECF No. 27-1 at 9–10] (sealed). Whether a private party acts as a government agent turns on whether the government knew of and acquiesced in the conduct, whether the private party intended to assist law enforcement, and whether the private party acted at the government's request. *United States v. Stephen*, 984 F.3d 625, 629 (8th Cir. 2021).

The record does not show that officers asked hospital staff to take the phone from J.S. Staff had an obvious reason of their own to take a phone away from a three-year-old patient. Nor did Officer Cuppy separate Defendant from the phone. Hospital staff decided that Defendant could not return to J.S.'s room. Officer Cuppy offered to retrieve the phone for him. [ECF No. 27-2 at 5] (sealed).

Whether or not the nurse acted at law enforcement's request when she tried to put the phone into airplane mode, her attempt did not separate Defendant from his phone, and it produced nothing. The same is true of her scrolling through notifications on the locked screen, and nothing

in the affidavit derives from either. [ECF No. 27-3 at 12–19] (sealed). The attempt to have J.S. unlock the phone, however, warrants comment. Asking a three-year-old to enter his father's passcode is not a practice the Court endorses. But that attempt also failed, officers accessed no data, and nothing from the phone informed the warrant application. *Id.* Because none of these efforts yielded any evidence, there is nothing to suppress.

Finally, Defendant's reply argues that J.S. lacked authority to consent to the phone's seizure. [ECF No. 33 at 3–4]. The Government does not rely on consent, so the Court need not address the argument.

3. Independent Source

Even if the seizure were unlawful, the evidence on the phone was obtained under the warrant. Evidence obtained through a warrant is admissible under the independent-source doctrine if the unlawful conduct did not prompt the decision to seek the warrant and information obtained through that conduct did not affect the issuing judge's decision. *Murray v. United States*, 487 U.S. 533, 542 (1988).

Both conditions are met. Detective Vasquez discussed a warrant for Defendant's phone with the county attorney's office around 12:25 p.m., before Officer Miller retrieved the phone shortly after 1:00 p.m. [ECF No. 27-2 at 10] (sealed); [ECF No. 27-9 at 1:35] (sealed). The retrieval therefore did not prompt the decision to seek a warrant. Nor did the retrieval affect the issuing judge's decision. The affidavit's probable-cause showing rested on the interview, the hospital surveillance, the vehicle registration, and J.S.'s mother's statements. [ECF No. 27-3 at 12–18] (sealed). The affidavit drew from the retrieval only the fact that police had the phone and a photograph of it. *Id.* at 17–18. Removing that information leaves probable cause intact. *See United States v. Swope*, 542 F.3d 609, 616 (8th Cir. 2008).

In any event, had officers left the phone where they found it, it would have remained in hospital custody until the warrant issued. The motion to suppress evidence from the phone is denied.

*B. The Van*

Defendant argues that officers impounded the Caravan on a hunch rather than on probable cause. He also argues that the impound served no community-caretaking function under the department's policies. [ECF No. 27-1 at 11–13] (sealed).

The second argument misses the mark. The Government does not defend the seizure as an inventory impound or an exercise of community caretaking. The Government defends it as an investigative seizure supported by probable cause. [ECF No. 31 at 13–14]. Defendant's authorities address impounds made without probable cause. *See Colorado v. Bertine*, 479 U.S. 367, 375–76 (1987) (upholding an inventory search of a van impounded after the driver's arrest for driving under the influence); *United States v. Kimhong Thi Le*, 474 F.3d 511, 514–15 (8th Cir. 2007) (upholding a trooper's impoundment, under a highway patrol policy for hazardous vehicles, of an overturned rental SUV left unattended forty feet from an interstate after a blizzard, where "no evidence suggest[ed] any motive other than a concern for safety"). They do not limit seizures that rest on probable cause.

When officers have probable cause to believe a vehicle contains evidence of a crime, the automobile exception permits them to search it without a warrant. *United States v. Kennedy*, 427 F.3d 1136, 1140–41 (8th Cir. 2005). It follows that they may take the lesser step of seizing the vehicle while they obtain one. *Chambers v. Maroney*, 399 U.S. 42, 51–52 (1970); *see also Florida v. White*, 526 U.S. 559, 565–66 (1999) (upholding the warrantless seizure of a car from a public parking lot based on probable cause that it was subject to forfeiture).

Officers had probable cause here. When Detective Vasquez had the Caravan towed, he knew that J.S. had ingested fentanyl on February 6 after spending much of that day in a vehicle with Defendant. [ECF No. 27-2 at 7] (sealed). The Caravan was the last place J.S. had been before reaching the emergency department. Yet Defendant had given an account of the drive to Broadlawns that distanced him from that vehicle, and the surveillance video contradicted it. *Id.* at 7–8. The fentanyl came from somewhere, and a false story aimed specifically at the vehicle supports a fair probability that the vehicle held evidence of where. *See United States v. Bettis*, 946 F.3d 1024, 1030 (8th Cir. 2020).

Defendant emphasizes Detective Vasquez's stated reason for the impound: that it "would benefit this investigation." [ECF No. 27-1 at 12–13] (sealed). But an officer's subjective reasons play no role in the probable-cause analysis. *Whren v. United States*, 517 U.S. 806, 813 (1996). The facts known to Detective Vasquez, viewed objectively, established probable cause.

Alternatively, suppression would be unwarranted even if the seizure were unlawful. Officers did not search the van until the warrant issued. The affidavit's showing as to the van rested on information independent of the impound. [ECF No. 27-3 at 12–18] (sealed). The seizure thus contributed nothing to the discovery of the evidence. *Segura*, 468 U.S. at 813–15.

Defendant may contend that, absent the seizure, he could have moved the van or removed its contents. *Segura* rejected the same argument. *Id.* at 815–16. The motion to suppress evidence from the van is denied.

### *C. The Search Warrant*

#### 1. Nexus

Probable cause requires "evidence of a nexus between the contraband and the place to be searched." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). Courts assessing a nexus

consider "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) (quotation omitted). The Court gives great deference to the issuing judge's determination. *Gates*, 462 U.S. at 236.

The affidavit easily established a nexus to the van. For the reasons above, it supported a fair probability that the van contained evidence of how J.S. came to ingest fentanyl. [ECF No. 27-3 at 13–16] (sealed). The affidavit added that Defendant had since fled the hospital and described himself as "on the run." *Id.* at 17.

Defendant's reply suggests that a detective investigating child endangerment could not reasonably search for evidence of drug distribution. [ECF No. 33 at 4–5]. The argument misreads the warrant. It authorized a search of the van for "illegal drugs" and evidence "relevant to the drug overdose." [ECF No. 27-3 at 7] (sealed). That is what officers found.

The nexus to the phone is thinner but sufficient. The affidavit established that Defendant had the phone with him during his interview, that the affiant believed it was the same phone later found with J.S., and that J.S.'s mother confirmed Defendant's phone number. *Id.* at 14, 17. It also explained that location data could show "paths/journeys to and from locations both before and after the overdose." *Id.* at 18.

That rationale is not conclusory. The affidavit reported that J.S. had spent most of February 6 with Defendant in a vehicle, and that Defendant gave false information about the circumstances surrounding the overdose. *Id.* at 13–15. Where J.S. had been in the hours before he collapsed bore directly on how he encountered fentanyl. A common-sense reading of the affidavit supports a reasonable, logical likelihood that the phone held that evidence. *See United States v. Davis*, 126 F.4th 610, 617 (8th Cir. 2025).

2. Particularity

The particularity requirement is "one of practical accuracy rather than of hypertechnicality." *United States v. Shrum*, 59 F.4th 968, 973 (8th Cir. 2023) (quotation omitted). A warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized. *Id.* Whether it meets that standard depends on "the total circumstances surrounding the case." *Id.* (quotation omitted).

The Court recognizes the privacy interests that a phone search implicates. *Riley*, 573 U.S. at 393–97. The warrant here nevertheless identified the specific phone and enumerated the categories of data to be seized. [ECF No. 27-3 at 6–7] (sealed). The Eighth Circuit has upheld a phone warrant of comparable breadth, reasoning that evidence of the offense "could have been found anywhere in the phone, and 'a warrant need not be more specific than knowledge allows.'" *United States v. Ivey*, 91 F.4th 915, 918 (8th Cir. 2024) (citation omitted). Nor has the Eighth Circuit required phone warrants to include a temporal limit. *United States v. Morgan-Derosier*, No. 24-2204, 2026 WL 1601749, at *3 (8th Cir. June 4, 2026).

Moreover, the warrant did not operate in a vacuum. It described the van search by reference to "the drug overdose," and the affidavit explained the offense under investigation and why the phone's data mattered. [ECF No. 27-3 at 7, 12–18] (sealed). An affidavit may supply particularity if it is incorporated into or attached to the warrant. *United States v. Curry*, 911 F.2d 72, 77 (8th Cir. 1990); *Shrum*, 59 F.4th at 973. Here, the warrant and affidavit were transmitted to and signed by the issuing judge as a single document. [ECF No. 27-3 at 28] (sealed). Read together, they limited the search to evidence related to J.S.'s overdose. *See United States v. Maccani*, 526 F. Supp. 3d 420, 446 (N.D. Iowa 2021), *aff'd*, 49 F.4th 1126 (8th Cir. 2022).

3. Good Faith

Evidence obtained in objectively reasonable reliance on a warrant is admissible even if the warrant is later found invalid. *United States v. Leon*, 468 U.S. 897, 922–23 (1984). The exception does not apply when the affiant misled the issuing judge with knowingly or recklessly false statements, when the issuing judge abandoned the judicial role, when the affidavit was so lacking in indicia of probable cause that belief in its existence was entirely unreasonable, or when the warrant was so facially deficient that no officer could reasonably presume it valid. *Id.* at 923; *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011).

Defendant invokes the first, third, and fourth exceptions. [ECF No. 33 at 4–5]. None applies. The first fails for the reasons given in Part II.D. The third fails because the affidavit sets out a detailed account drawn from interviews, surveillance video, and vehicle records. *See United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (applying good faith despite a challenge to the affidavit's nexus). The fourth fails as well. Defendant relies on *Groh v. Ramirez*, but the warrant there failed to describe the items to be seized at all. 540 U.S. 551, 557, 564 (2004). This warrant described them in detail. Given *Ivey* and the absence of any Eighth Circuit requirement of a date range, a reasonable officer could rely on it. *See Morgan-Derosier*, 2026 WL 1601749, at *3.

*D.* Franks

Defendant argues that the affidavit contained misstatements and omissions that entitle him to a *Franks* hearing. [ECF No. 27-1 at 17–19] (sealed). A defendant is entitled to such a hearing only upon a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or omitted facts, and that the affidavit, corrected or supplemented, would not support probable cause. *Franks v. Delaware*, 438 U.S. 154,

155–56 (1978); *United States v. Gater*, 868 F.3d 657, 659–60 (8th Cir. 2017). Defendant identifies three alleged defects, but none is material.

Defendant first challenges the affidavit's statement that Officer Miller "went to the room and retrieved the phone in JS' possession." [ECF No. 27-3 at 17] (sealed). In fact, hospital staff had already taken the phone from J.S., and Officer Miller collected it from a nurse. [ECF No. 27-9 at 1:13–1:40] (sealed). The affidavit also omits the attempt to have J.S. unlock the phone. Neither the precise location of the retrieval nor the failed attempt bears on whether probable cause supported a search of the phone.

Defendant next faults the affidavit for reporting that he had "fled" the hospital and told J.S.'s mother he was "on the run," without mentioning that hospital staff had barred him from returning to J.S.'s room. [ECF No. 27-3 at 17] (sealed); [ECF No. 27-1 at 18] (sealed). But the addition of that fact would not undermine probable cause. Supplemented, the affidavit would also report that Defendant learned officers had impounded the van as part of the investigation, asked about his phone, and then left. [ECF No. 27-2 at 5] (sealed). That account is no less suggestive of consciousness of guilt. Defendant's reply also disputes whether he actually told J.S.'s mother that he was "on the run." [ECF No. 33 at 4]. But that dispute does not implicate *Franks*, which reaches only "[t]he deliberate falsity or reckless disregard . . . of the affiant, not of any nongovernmental informant." 438 U.S. at 171. Detective Vasquez accurately reported what J.S.'s mother told him, and another officer reported the same statement. [ECF No. 27-2 at 3, 9] (sealed).

Finally, Defendant takes issue with the affidavit's report that he gave the apartment number as 89, arguing that he was unsure. [ECF No. 27-3 at 13] (sealed); [ECF No. 27-1 at 19] (sealed). The affidavit accurately recounts the number Defendant gave and notes that the twins' mother's apartment number was 87. [ECF No. 27-3 at 13, 15] (sealed); [ECF No. 27-10 at 0:14–0:45]

(sealed). Even setting the apartment number aside, the affidavit's account of the fabricated drive to Broadlawns and the incorrect statement about J.S.'s mother's residence amply support the credibility inference. [ECF No. 27-3 at 13–15] (sealed). Defendant has not made the required substantial preliminary showing.

## III. CONCLUSION

For the foregoing reasons, Defendant is not entitled to a *Franks* hearing, and his Motion to Suppress is DENIED. [ECF No. 27].

IT IS SO ORDERED.

Dated this 29th day of October, 2026.

STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT